## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PATRICIA A. FORD-CUTCHLOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 17-2124-JWL |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.      Background**

Plaintiff applied for DIB, alleging disability beginning October 6, 2013. (R. 22, 213). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the ALJ erred in failing to find her borderline intellectual functioning and her hydrocephalus are severe

impairments at step two of his consideration and in failing to consider the combined effects of all of her impairments thereafter when assessing her RFC, in failing to assess RFC limitations attributable to borderline intellectual functioning, and in the hypothetical questions presented to the vocational expert.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the

2

[Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses each alleged error in the order presented in Plaintiff's Brief, and finds no reversible error.

## II.     Consideration of All of Plaintiff's Impairments

Plaintiff argues that her full scale IQ tested at 71 or 74 which clearly places her within the range of borderline intellectual functioning and that her reading, writing, and calculation abilities are extremely limited. (Pl. Br. 22-23). She argues that despite this "overwhelming evidence . . . the ALJ found that [the] record failed to document or support Ms. Ford-Cutchlow's allegation of an inability to read, write, or have difficulty with her memory." She argues that it was reversible error not to find Plaintiff's borderline intellectual functioning or cognitive impairment is a severe impairment. Id. at 24. Plaintiff next argues that she has hydrocephalus (excessive accumulation of cerebrospinal fluid on the brain) which causes daily headaches, and that the ALJ erred in finding this condition was not severe. Id. at 25-26.

As Plaintiff's Brief suggests, an impairment is not considered severe if it does not significantly limit a claimant's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, a claimant must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). A claimant need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d 748, 751 (10th Cir. 1988). However, she must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on a claimant's ability to do basic work activities, it could not prevent her from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

Here, the ALJ specifically found that Plaintiff has been diagnosed with certain impairments--headaches, carpal tunnel syndrome with carpal tunnel release surgery, and depression/mood disorder/adjustment disorder--which are severe within the meaning of the Act. (R. 25). He found that hydrocephalus, in this case, is not severe within the meaning of the Act, and in his step two discussion he did not mention intellectual functioning or any cognitive impairment. Id. However, in this case the court need not

determine whether the ALJ erred in not specifically finding that hydrocaphalus and borderline intellectual functioning are severe impairments within the meaning of the Act. Although the court has its doubts, it will assume that Plaintiff is correct, that these impairments are severe in this case, and that the ALJ erred in failing to so find.

In Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Later, in Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008), the court held that the step two failure to find that additional impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining plaintiff's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"  Because the ALJ in this case found that Plaintiff has a number of impairments that are severe, the real question the court must consider is whether the ALJ considered the effects of Plaintiff's hydrocephalus and borderline intellectual functioning when he assessed Plaintiff's RFC.

Plaintiff argues that "[b]ecause the ALJ did not find Ms. Ford-Cutchlow's borderline intellectual functioning/cognitive impairment and hydrocephalus severe

impairments, the effects of those conditions were not considered in combination with her other impairments," and "the ALJ gave no indication that he considered the combined effects of these conditions," and the case should be reversed. (Pl. Br. 26-27). Plaintiff is wrong on all three counts. Plaintiff's first proposition, that the failure to find the impairments severe within the meaning of the Act means that the ALJ also did not consider those impairments in combination, is a non-sequitur. If that conclusion followed logically from the premise, then both Brescia and Hill would be nothing more than nonsense, and were wrongly decided. That is not the case. It is clearly possible to find that impairments (hydrocephalus and borderline intellectual functioning in this case) are not severe within the meaning of the Act, but to recognize that they are impairments and to consider their effects when assessing RFC.

Second, the ALJ did indicate that he had considered these impairments specifically and had considered all of Plaintiff's impairments in combination when assessing RFC. As Plaintiff points out in her Reply Brief, in stating the "Applicable Law," the ALJ noted that when assessing RFC he "must consider all of the claimant's impairments, including impairments that are not severe." (R. 24) (citing 20 C.F.R. §§ 404.1520(e), 404.1545; and Soc. Sec. Ruling (SSR) 96-8p). Moreover, when stating his step three findings, as the Commissioner pointed out in her Brief, the ALJ specifically stated that he had "considered all of the claimant's impairments individually and in combination." (R. 25) (cited in the Commissioner's Brief at 7 n.5).

The ALJ discussed Plaintiff's hydrocephalus at several points in the decision. He noted that in itself it was not severe because Plaintiff had not pursued any specific treatment in that regard. (R. 25). Nonetheless, as Plaintiff points out, headaches are a common symptom of hydrocephalus, Plaintiff has had specific treatments for headaches, and the ALJ found Plaintiff's headaches are a severe impairment. Id. Finally, when discussing his assessment of Plaintiff's RFC, the ALJ provided considerable discussion of the treatment and testing Plaintiff received for her mental impairments. (R. 29-30). In that discussion, he noted Dr. Pulcher's findings that she had average attention and concentration, average to low-average memory function, overall level of comprehension in the average to low-average range, and a "grossly intact" ability to understand and carry out simple instructions. (R. 29). He discussed Dr. Pulcher's opinion that "claimant's allegations that she was 'completely unable to read' was clearly contradictory to her work history as a clerk in a governmental office for fourteen years." Id. (citing Ex. 6F (R. 438-42)). He summarized Dr. Bean's two encounters with Plaintiff and noted that Dr. Bean had tested Plaintiff, whose Full Scale IQ score was 71, and he noted that score was at the 3rd percentile and in the borderline range. (R. 29-30). The ALJ stated that "[m]ental status examination noted that the claimant was well oriented and had employment in a supportive environment, but appeared to function in the low average to borderline cognitive range." Id. at 30. He summarized his assessment of Plaintiff's mental RFC:

> When considering the evidence as a whole, the undersigned finds that the claimant has some mental limitations, but overall these conditions are best characterized as moderate. Despite reporting an inability to read, write, and

8

memory problems, the evidence of record fails to document or support this allegation. As discussed above, treatment notes consistently document essentially normal mental status examinations. The evidence of record fails to document or support that the claimant's basic abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress have ever been significantly impaired on any documented long-term basis. There has been no documented serious deterioration in her personal hygiene or habits, daily activities or interests, effective intelligence, reality contact, thought processes, memory, speech, mood and affect, attention span, insight, judgment, or behavior patterns over any extended period of time. At the hearing, the claimant displayed no obvious signs of depression, anxiety, memory loss, or other mental disturbance. She was alert and oriented with a pleasant and cooperative demeanor. She answered all questions in a clear and logical manner. Nonetheless, the undersigned gives little weight to his lay observations, and far greater weight to the clinical observations of medical and mental health professionals.

That said, the undersigned finds that the claimant's medically-diagnosed mental impairments do not support greater limitation than that found in the residual functional capacity above. The undersigned finds that the credibility of the claimant's statements regarding functional limitations are partially eroded by the inconsistencies in the activities of daily living and disability-seeking statements with multiple somatic complaints, but very little objective evidence. The claimant has a consistent work history at a skilled job, but now alleges that she cannot read or write or understand anything as well as never really understanding anything. She testified that she always had somebody telling her what to do and "covering for her" with providing work assistance. This is less than credible. The claimant graduated from high school. There is no evidence to support that she is unable to read, write, and understand. The claimant's employer reported that the claimant could perform the job, but with indicating some attitude problems. The amending of the alleged onset date of disability to January 20, 2015, based upon Exhibit 24F, (Testimony), does not support greater limitation that [sic] already accommodated in the residual functional capacity above.

(R. 30).

There can be no doubt the ALJ considered hydrocaphalus and borderline intellectual functioning in combination with Plaintiff's other impairments when assessing her RFC. Plaintiff has shown no error in this regard,

## III.   RFC Assessment

Plaintiff next claims that despite substantial record evidence the ALJ erred in failing in the RFC he assessed to account for limitations in her abilities to read, write, and perform simple mathematical calculations. (Pl. Br. 28). She argues that the limitation to unskilled work does not account for her borderline intellectual functioning and does not "properly account for Ms. Ford-Cutchlow's depression/mood disorder/adjustment disorder." (Pl. Br. 30). The discussion quoted above demonstrates the ALJ's explanation how the record evidence accounts for Plaintiff's mental impairments. Moreover, the ALJ explained that he found Plaintiff's allegations of symptoms are "not entirely credible" (R.28), he explained why he discounted the opinions of Plaintiff's son, and he explained the weight he accorded the medical source opinions and the reasons for that weight. (R. 31). And, Plaintiff does not argue that the ALJ erred in these evaluations. Plaintiff does not point to record evidence of a particular functional limitation that has not been properly discounted by the ALJ which would compel a finding that Plaintiff is unable to perform unskilled work with no more than occasional contact with the public or with coworkers, and which is not a high production rate job, as the ALJ assessed.

## IV.   Vocational Expert Testimony

Plaintiff's argument that the hypothetical questions presented to the vocational expert do not relate with precision all of Plaintiff's limitations is based on her view of the limitations caused by her borderline intellectual functioning. (Pl. Br. 30). However, as noted above, the ALJ properly discounted that view of the evidence and Plaintiff has shown no greater limitations than assessed by the ALJ. Beyond that, Plaintiff implies that the jobs testified to by the vocational expert are beyond her capabilities even as found by the ALJ. Id. However, the vocational expert's testimony in response to the hypothetical which relates with precision Plaintiff's RFC is sufficient record evidence to support the ALJ's step five finding. Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 26th day of January 2018, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**